**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

SUBRANNI ZAUBER LLC
Willow Ridge Executive Office Park
750 Route 73 South, Suite 307B
Marlton, NJ 08053
(609) 347-7000; Fax: (609) 345-4545
By:  William P. Rubley, Esq.  019192002
     Anthony J. Canale, Esq.  143842015
Attorneys for Plaintiff, Frances Haque

| | |
|---|---|
| In Re:<br><br>FRANCES HAQUE<br><br>Debtor | **Case No.: 13-36691-ABA**<br>**Chapter 7** |
| FRANCES HAQUE<br><br>Plaintiff.<br><br>v.<br><br>SKYLINE CONDOMINIUM ASSOCIATION, THOMPSON REALTY COMPANY; CALLAGHAN THOMPSON & THOMPSON, PA and WILLIAM A THOMPSON, III, ESQUIRE<br><br>Defendant. | **Adversary No.: 17-01117-ABA** |

## BRIEF IN SUPPORT OF MRS. HAQUE'S MOTION TO DISQUALIFY COUNSEL

### I.  MATTER BEFORE THE COURT

This matter comes before this Honorable Court by way of Mrs. Frances R. Haque's, Motion to Disqualify Mr. William A. Thompson, III, Esquire, as counsel for Skyline Condominium Association and Thompson Realty Company.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Mrs. Frances R. Haque ("Mrs. Haque") commenced this case on December 6, 2013, by filing a Voluntary Petition for Relief under Chapter 7 of Title 11 of the United States Code ("Petition"). In her Petition the Mrs. Haque specifically listed Skyline Condominium Association ("Skyline") as a creditor and listed a pre-petition debt to Skyline as "Condo Fees" in the approximate amount of $16,000.00. Certification of William P. Rubley, Exhibit "A." Both Skyline and its counsel, Mr. William H. Thompson, Esquire with Callaghan Thompson & Thompson were notified of the filing of the Petition and were listed on the Mrs. Haque's schedules to receive notice. In her Petition, the Mrs. Haque stated that her intention was to surrender the condominium that was subject to the "Condo Fees." See Chapter 7 Individual Debtor's Statement of Intention. The Mrs. Haque's bankruptcy matter proceeded to conclusion as a "No Asset" case and on March 14, 2014, this Court entered the Discharge Order. Certification of William P. Rubley at Exhibit "B."

### a. The First Action

Following the filing of the Petition, Skyline and their counsel first began its attempts to collect on the alleged debt stemming from the pre-petition condominium fees by filing an action in the Superior Court of New Jersey, Atlantic County bearing docket number DC-004115-14 ("First Action"). Certification of William P. Rubley, Exhibit "B." Mr. William A. Thompson, III, Esquire, represented Skyline in the First Action. See, Id. Upon learning of the Skyline's Complaint against Mrs. Haque, the law firm of Subranni Zauber, LLC, counsel for Mrs. Haque, sent Mr. Thompson a letter, dated July 11, 2014, and followed up with a phone call, advising him that the complaint was improper. Having heard no response, Mrs. Haque's counsel sent a second letter to Mr. Thompson, Esquire advising him that the claim against Mrs. Haque was frivolous as

2

it was without basis in law or fact and clearly was filed for an improper purpose, considering the claims included pre-petition debt that was discharged pursuant to the bankruptcy discharge order dated March 14, 2014. Certification of William P. Rubley, Exhibit "C". Skyline failed to respond in a timely manner to Mrs. Haque's requests and failed to dismiss its Complaint against Mrs. Haque. So, on August 12, 2014, Mrs. Haque was forced to file a Motion to Dismiss Skyline's Complaint for failure to state a claim pursuant to R. 4:6-2(e) in the First Action.

Finally, on August 14, 2014, Mr. Thompson sent a letter to Mrs. Haque's counsel informing him that he received Mrs. Haque's Motion to Dismiss. In his letter, Mr. Thompson challenged Mrs. Haque's basis for the Motion to Dismiss and called Mrs. Haque's counsel's competence in the field of bankruptcy into question. Additionally, Mr. Thompson defended the merits of Skyline's claims against Mrs. Haque. Furthermore, he demanded that Mrs. Haque withdraw her Motion to Dismiss Skyline's Complaint, otherwise he would file opposition to the Motion and seek sanctions for the "clearly frivolous filing." Certification of William P. Rubley, Exhibit "D." Attached to Mr. Thompson's August 14th letter was another letter addressed to Mrs. Haque's Counsel, wherein Mr. Thompson again criticized Mrs. Haque's counsel for filing the Motion to Dismiss on behalf of Mrs. Haque without a basis for doing so. Once again, Mr. Thompson reaffirmed the legitimacy of Skyline's claims against Mrs. Haque, as pled in the Complaint. See Mr. Thompson's August 15, 2014 letter attached as Exhibit "E."

Apparently Mt. Thompson saw the error in his ways and on August 18, 2014, Mr. Thompson sent a letter to Mrs. Haque's counsel apologizing for filing the frivolous Complaint against Mrs. Haque on behalf of Skyline, and advising Mrs. Haque's counsel that he would be submitting a Stipulation of Dismissal. Certification of William P. Rubley, Exhibit "F." Mr. Thompson then voluntarily dismissed the First Action.

3

### b. The Second Action

Inexplicably, even after having acknowledged that the pre-petition condominium assessments were discharged in the Mrs. Haque's Bankruptcy, Skyline, through its counsel Mr. Thompson, filed a second complaint in the Superior Court of New Jersey, Atlantic County bearing docket number DC-004405-16 ("Second Action") once again seeking the entry of a judgment for pre-petition condominium fees. Certification of William P. Rubley, Exhibit "G." The pre-petition condominium assessments are identified as "Previous Balance" on Schedule A, attached to the complaint in the Second Action.

Mrs. Haque was once again forced to retain counsel and file an answer to the Second Action. Upon filing of the Answer, Skyline and Mr. Thompson responded by filing a Motion for Summary Judgment ("Motion") in the Second Action. What's remarkable about the Motion is that in the brief in support of the Motion, Mr. Thompson concludes, without a reference to any legal authority:

> The defendant also makes reference to a bankruptcy that has been filed. Condominium fees are a secured debt under the governing documents and New Jersey law, therefore are not discharged in bankruptcy.

Certification of William P. Rubley, Exhibit "H." Mr. Thompson knows, as any bankruptcy practitioner should, that this legal conclusion was incorrect and in direct contradiction to 11 U.S.C. §523, which provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual Mrs. Haque from any debt--
>
> - - -
>
> (16) for a fee or assessment that becomes due and payable after the order for relief to a membership association with respect to the Mrs. Haque's interest in a unit that has condominium ownership, in a share of a cooperative corporation, or a lot in a homeowners association, for as long as the Mrs. Haque or the trustee has a legal, equitable, or possessory ownership interest in such unit, such corporation, or such lot, ***but nothing in this paragraph shall except from discharge the debt of a Mrs. Haque***

4

*for a membership association fee or assessment for a period arising before entry of the order for relief in a pending or subsequent bankruptcy case*;

11 U.S.C.A. § 523 (emphasis added). In fact, by letter dated August 18, 2014 Mr. Thompson acknowledged that the Mrs. Haque was correct and that personal liability on pre-petition condominium fees were discharged. Notwithstanding his prior admission, in the Second Action, Mr. Thompson claims the pre-petition condominium fees were not discharged. Certification of William P. Rubley, Exhibit "F."

Remarkably, Mr. Thompson then reached out to Mrs. Haque's mortgage company and advised that he was going to file a lien for both pre- and post-petition arrears. Mr. Haque's mortgage company then paid both pre- and post-petition arrears and Mr. Thompson's attorney's fees and then declared Mrs. Haque in default of her mortgage. After Mr. Thompson was paid his fees and the arrears he voluntarily dismissed the Second State Court Action.

  c. **The Instant Action**

The instant action became necessary to protect the Mrs. Haque from predatory and costly litigations filed by Mr. Thompson, Skyline, and Thompson Realty. Mrs. Haque filed a Motion to Reopen the bankruptcy matter on December 22, 2016. This Court subsequently granted Mrs. Haque's Motion, and Mrs. Haque filed the instant Adversary Complaint on January 26, 2017. The Adversary Complaint sets forth a cause of action against Skyline seeking injunctive relief; a cause of action against all defendants seeking sanctions for a violation of this Court's discharge order; and a cause of action against Thompson Realty, Mr. Thompson, and Mr. Thompson's law firm for violations of the Fair Debt Collection Practices Act. Certification of William P. Rubley Exhibit "I." The factual allegations in the Adversary Complaint chronical Mr. Thompson's involvement in the predatory actions and litigations aimed at Mrs. Haque despite Mrs. Haque's strict adherence to her bankruptcy plan and subsequent discharge of her debts. Id.

On February 23, 2017, Skyline and Thompson Realty filed an Answer through their attorney, Mr. Thompson. Certification of William P. Rubley, Exhibit "J." Approximately three weeks later, Mr. Thompson's attorney, Jason S. Feinstein, Esquire, filed an Answer to Mrs. Haque's Complaint on March 13, 2017. Certification of William P. Rubley Exhibit "K." It was at that time that the conflicts of interests, discussed below, became apparent, and this motion become necessary to address the obvious violations of the New Jersey Rules of Professional Conduct.

### III.    LEGAL ARGUMENT

#### a.    Legal Standard

Bankruptcy courts are to apply the law of the state in which they sit to the determination of motions to disqualify counsel from a representation. In re Congoleum Corp., 426 F.3d 675, 687 (3d Cir. 2005) ("State precedents as to professional responsibility should be consulted when they are compatible with federal law and policy and do not 'balkanize federal law.'"); In re IH 1, Inc., 441 B.R. 742, 747 (Bankr. D. Del. 2011). The Third Circuit explained that while the professional laws of the state apply, bankruptcy professionals are to be "guided by a stricter, fiduciary standard." In re Congoleum, 426 F.3d 687 (citations omitted). "In a motion to disqualify counsel, the moving party bears the burden of proving that disqualification is appropriate." Maldonado v. New Jersey, 225 F.R.D. 120, 137 (D.N.J. 2004). When determining a motion to disqualify counsel, a trial court must strike the appropriate balance between ensuring that the reputation of the legal profession remains free of the appearance of impropriety with a litigant's right to elect suitable counsel for themselves. Steel v. Gen. Motors Corp., 912 F. Supp. 724, 732 (D.N.J. 1995). As the New Jersey Supreme Court has noted, the priority of keeping public trust in the legal profession is best accomplished through a trial court's faithful adherence to New Jersey's policy of ensuring

"careful compliance" with the Rules of Professional Conduct. Twenty-First Century Rail Corp. v. New Jersey Transit Corp., 210 N.J. 264, 279 (2012). New Jersey state and federal courts still require that "if there is any doubt as to the propriety of an attorney's representation of a client, such doubt must be resolved in favor of disqualification." United States v. Pelullo, No. CRIM. 11-740-2 RBK, 2012 WL 993422, at *3 (D.N.J. Mar. 23, 2012) (quoting Steel v. GMC, 912 F.Supp. 724, 733 (D.N.J.1995)).

### b.     Thompson's Interests are Patently Adverse to those of His Client.

The Rules of Professional Conduct mandate that a lawyer **"shall not"** represent a client where a concurrent conflict of interest exists. RPC 1.7(a). The rule defines a concurrent conflict of interest as follows:

(1) the representation of one client will be directly adverse to another client; **or**

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person *or by a personal interest of the lawyer*.

Id. (emphasis added). New Jersey courts have held that Rules of Professional Conduct must be observed through strict compliance. State v. Loyal, 164 N.J. 418, 428 (2000); State v. Rivera, 2016 WL 1454490, at *5 (N.J. Super. Ct. App. Div. Apr. 13, 2016). The rationale behind the need for strict compliance to the Rules of Professional Conduct steams from an understanding that the legal profession is one that essentially requires the public's continuing trust. State v. Hudson, 443 N.J. Super. 276, 289 (App. Div. 2015) (holding that while an appearance of impropriety is not sufficient for disqualification, the Rules of Professional Conduct do aim to preserve the public trust in the judiciary and officers of the court); In re Harris, 182 N.J. 594, 609, 868 A.2d 1011, 1020 (2005) ("The reputation of the entire bar requires that all attorneys comply with the highest

7

standards of professional conduct.) (internal quotations and citations omitted). Nevertheless, an actual or potential conflict of interest must exist for disqualification of counsel to be ordered. Id.

If such a conflict is found, Rule of Professional Conduct 1.10[1] would impute the conflicts arising under Rule 1.7 to the compromised attorney's entire firm. RPC 1.10; New Jersey Div. of Child Prot. & Permanency v. G.S., 447 N.J. Super. 539, 565, 149 A.3d 816, 832 (App. Div. 2016). A conflict under Rule 1.7(a) is generally waivable. In re Roper & Twardowsky, LLC, 2017 WL 746213, at *9 (Bankr. D.N.J. Feb. 24, 2017). However, any such waivers are reviewable by the trial court to ensure compliance with the high standards of the Rule. New Jersey Div. of Child Prot. & Permanency v. G.S., 447 N.J. Super. 539, 577 (App. Div. 2016).

As recently as last month, this Court held that a violation of Rule 1.7 had occurred when two attorneys were named parties to a lawsuit and potential parties in future lawsuits arising from the same factual basis. In re Roper & Towardowsky, *supra*; See also, Comando v. Nugiel, 436 N.J. Super. 203 (App. Div. 2014); Gray v. Commercial Union Ins. Co., 191 N.J. Super. 590, 598 (App. Div. 1983). In Roper & Towardowsky, Judge Meisel determined that two attorneys could not represent a debtor where the attorneys were principles of the debtor, creditors of the debtor, and defendants in a count of fraudulent transfer, among a host of "dizzying roles" the attorneys held in the litigation. Id. Judge Meisel reasoned the attorneys' conflicts were clear due to the monetary and liability stakes the attorneys held in the litigation. Id. The court could not reconcile the patent

---

[1] The pertinent text of Rule 1.10 provides as follows:

"(a) When lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by RPC 1.7 or RPC 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

RPC 1.10.

conflicts as there was no feasible way the attorneys could represent the debtor without harming their own interests. Id.

In the instant matter, Mr. Thompson is a named defendant, very much like the attorneys in Roper. Yet, he has entered his appearance on behalf of Skyline and Thompson Realty in a matter that necessarily centers on Mr. Thompson's conduct, supposedly on behalf of Skyline and Thompson Realty. Certification of William P. Rubley, Exhibit "L." As discussed above, Mr. Thompson twice filed litigation that directly conflicts with a discharge order granted to Mrs. Haque by this Court. Id. at Ex. "B," "H." Mr. Thompson has admitted that he understood the impropriety of the First Action. Id. at Ex. "G." He nevertheless proceeded to file the Second Action, which also included pre-petition Condo Fees. In doing so, Mr. Thompson subjected both Skyline and Thompson Realty to this litigation, the outcome of which may subject both entities to judgments for extensive damages. Those same actions have subjected Mr. Thompson himself to liability, creating an adversarial relationship with clients.

An attorney owes complete and undivided loyalty to client who has retained him. Matter of Dolan, 76 N.J. 1 (1978). The New Jersey Supreme Court has noted that the fundamental understanding of the attorney-client relationship is that "an attorney will give complete and undivided loyalty to the client so that the attorney should be able to advise the client in such a way as to protect the client's interests, utilizing his professional training, ability and judgment to the utmost." State ex rel. S.G., 175 N.J. 132 (2003) (quoting Matter of Dolan, 76 N.J. at 9). In this matter, Mr. Thompson's loyalties to his client are compromised by his personal interests in this litigation. Crafting an ethical solution to the intertwined interests of Mr. Thompson and his clients will be no easy task. Any potential solution will likely foster even more confusion and a further

waste of judicial and party resources.[2]  Therefore, as was done in Roper, Mr. Thompson's representation of Skyline and Thompson Realty must be terminated in order to observe strict compliance with Rule of Professional Conduct 1.7, in light of the irreconcilable conflict of interests at hand.  Mr. Thompson's disqualification is the only mechanism available to give effect to the Third Circuit's mandate that bankruptcy professionals be held to a stricter fiduciary duty to their clients.  See, In re Congoleum Corp., *supra*.

### c. Mr. Thompson will be Called as a Witness at the Time of Trial.

The Rules of Professional Conduct preclude an attorney from acting as an advocate in a matter in which the attorney is likely to be called as a witness at the time of trial.  RPC 3.7.  Rule 3.7 reads in pertinent part as follows:

> A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client.

Id.  "An attorney is 'likely to be a necessary witness only where he has crucial information in his possession which may be divulged."  Ramos v. Cowan Sys., LLC., 2015 WL 8664279, at *3 (D.N.J. Dec. 11, 2015)(citations omitted).  The statutory language of Rule 3.7 allows the

---

[2] Mr. Thompson's representation of Skyline and Thompson Realty while he is represented by Mr. Feinstein creates further complications under Rule of Professional Conduct 4.2.  That rule states as follows:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows, or by the exercise of reasonable diligence should know, to be represented by another lawyer in the matter, including members of an organization's litigation control group . . . .

RPC 4.2.

This office cannot speak candidly to Skyline's counsel about Mr. Thompson's improper conduct in the two prior State Court Actions, because Skyline's counsel *is* Mr. Thompson.  All the while, Mr. Thompson is represented by separate counsel, Jason S. Feinstein, regarding the same conduct that has subjected Skyline and Thompson Realty to potential liability.  Thus, this office may inadvertently run afoul of Rule 4.2 by communicating with Mr. Thompson about his clients because his own conduct cannot be separated from the potential liability of his clients.

disqualification of an attorney in both pretrial and trail activities. United States v. Pelullo, 2012 WL 993422, at *1 (D.N.J. Mar. 23, 2012). While disqualification under Rule 3.7 does not always act as a bar to representation in the pretrial phases of litigation, trial courts prefer to resolve attorney-witness issues in advance of trial so as to limit the use of disqualification motions as improper trial tactics. See, Main Events Prods. LLC v. Lacy, 220 F. Supp. 2d 353, 356 (D.N.J. 2002); Krajewski v. Urgo, 2005 WL 1252547, at *3 (N.J. Super. Ct. Ch. Div. May 13, 2005).

"RPC 3.7 has no waiver provision; unlike the conflict of interest provisions, the conflicting roles of attorney and witness cut directly to the integrity of the court's ability to decide the issues before it." Freeman v. Vicchiarelli, 827 F. Supp. 300, 306 (D.N.J. 1993).

In Pelullo, Judge Kugler held that an attorney may be disqualified from pretrial and trial activities when the attorney was a likely witness at trial and had conflicts of interests with other defendants in the case. Pelullo, 2012 WL 993422, at *3. There, the attorney in question was found to be a necessary witness, because information gathered in his role as attorney for an alleged shell company could prove one of the elements of the government's case (whether particular defendants exerted control over shell companies). Id. In particular, the court found that the attorney's admissions in pleading and other filings with the court regarding the ownership interest of the shell companies showed the necessity of the attorney's testimony to the government's case. Id. The court reasoned that the attorney's prior representation of the shell companies coupled with his admissions to court supported the court's ruling disqualifying the attorney from representing his present client in pretrial activates. Id. at *4.

Mr. Thompson has been consistently involved in this matter from its inception to the present litigation. As noted above, Mr. Thompson's clients were represented in the original bankruptcy, listed on the Petition, and ultimately received notice of the discharge granted by this

11

Court to Mrs. Haque. Disregarding the discharge order, Mr. Thompson moved forward with the filing of the First Action on behalf of Skyline and Thompson Realty. That action sought the collect of Condo Fees that were clearly subject to the discharge order. The discharge order and its preclusive effects were brought to Mr. Thompson's attention. However, he disregarded the warnings provided to him with regard to the illegitimate nature of his client's claims. Following a series of condescending correspondences from Mr. Thompson to Mr. Rubley, Mr. Thompson finally admitted that his clients' claims were ill-conceived, and the claims were withdrawn.

Mr. Thompson then filed a second lawsuit in which he again sought to impose personal liability on Mrs. Haque for the pre-petition Condo Fees. It is this series of events that Mr. Thompson will be called upon to explain under oath at trial. Mr. Thompson's testimony will have to explain his thought process with regard to the institution of the two (s) State Court Actions.[3] Mr. Thompson will also be called upon to testify regarding other matters where similar conduct may have occurred. If fact, Mr. Thomson had admitted that he has taken similar action on behalf of other clients as well. Certification of William P. Rubley, Exhibit "N." In each of those representations, Mr. Thompson admits to filing *in personum* actions to obtain a judgment against debtors personally to avoid the cumbersome New Jersey foreclosure process. Id.

---

[3] In Skyline's Answer to the instant action, Skyline, through Mr. Thompson, pled that it did not direct Mr. Thompson to include the pre-petition debts in its state court Complaints, nor did Skyline direct Mr. Thompson to file a Motion for Summary Judgment. Skyline's admissions are troubling in and of themselves, because the admissions signal a continuing and systemic disregard for the Rules of Professional Conduct. These admissions cut directly against Rule of Professional Conduct 1.2, which states as follows:

> **(a)** A lawyer s***hall abide by a client's decisions*** concerning the scope and objectives of representation, subject to paragraphs (c) and (d), and as required by RPC 1.4 ***shall consult with the client about the means to pursue them***. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation.

RPC 1.2 (emphasis added).

The anticipated testimony of Mr. Thompson will be complex and provide great insight into the merits of the instant matter. As such, the anticipated scope of the testimony falls outside of either of the enumerated exceptions to Rule 3.7. Therefore, this Honorable Court should disqualify Mr. Thompson as counsel for Skyline and Thompson Realty, and in doing so, provide those defendants with the greatest possible opportunity to secure competent counsel. "New Jersey state and federal courts still require that 'if there is any doubt as to the propriety of an attorney's representation of a client, such doubt must be resolved in favor of disqualification.'" United States v. Pelullo, *supra.*

### d. Mr. Thompson's Testimony is not Excluded Under Rule 3.7(a).

Mr. Thompson's testimony will not be primarily focused on uncontested issues or the nature and value of legal services rendered, and therefore, Mr. Thompson's conflict is not exempt from 3.7(a). Rule of Professional conduct provides three exceptions the general rule that an attorney must not act as an advocate in a matter to which he is an essential witness. RPC 3.7(a). Those exceptions are as follows:

> (1) the testimony relates to an uncontested issue;
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
> (3) disqualification of the lawyer would work substantial hardship on the client.

Id. "[Rule] 3.7 is a rule of disqualification designed to prevent prejudice to the client whose lawyer will be required to testify, as well as to reduce the possibility of unfairness to the opposing party in litigation." Manolis v. Shlakman, 2006 WL 289112, at *3 (N.J. Super. Ct. Feb. 3, 2006) ( citing *Michels*, *New Jersey Attorney Ethics*, p.620 (Gann 2000)). [4]

---

[4] Mr. Thompson may raise a similar argument with respect to the possibility of Mr. Rubley being called as a witness at the time of trial. However, such an argument is easily and significantly distinguishable from the present motion. Rule 3.7 provides a limited set exclusions to the general rule that a lawyer may not testify at the time of trial. RPC 3.7(a)(1)-(2). In particular, the rule provides that a lawyer may testify at trial where the testimony relates to uncontested matters or as to the nature and amount of legal expenses incurred by his client. Id.

In this instant matter, Mr. Thompson will be testifying as to his procedure and strategies in pursuit of personal judgments against Mrs. Haque's assets. Mrs. Haque does not seek Mr. Thompson's testimony to prove that he provided any broad range of legal services, but rather the testimony is sought to prove the specific services rendered on this, and other similar, occasions regardless of the costs of those services. Mrs. Haque has brought the instant motion in this early stage of the litigation to avoid undue hardship on Skyline and Thompson Realty. In fact, the instant motion, if granted, will serve to avoid the inevitable struggles that all parties will encounter as the result of the present and clear conflicts of interest that plaque Mr. Thompson's continued representation of Skyline and Thompson Realty.

### III. Conclusion

Mrs. Haque, Francis Haque, moves this Honorable Court to disqualify Mr. Thompson as counsel for Skyline and Thompson Realty in order to avoid patent and non-waivable conflicts of interests. As discussed above, Mr. Thompson has been named in this lawsuit as a defendant along with his clients, Skyline and Thompson Realty. The actions against Mr. Thompson and his clients arise from actions taken by Mr. Thompson and on behalf of his clients in the two prior state court actions.

Not only does Mr. Thompson's current representation create an inherent and non-waivable conflict of interest, but Mr. Thompson will also be a necessary witness in this matter.

---

It is anticipated that Mr. Thompson's argument would implicate Mr. Rubley as a witness to testify regarding letters between counsel and the attorney fees associated with the institution and prosecution of this matter. The actual sending and receipt of various correspondences in this matter are uncontested issues. Even if Mr. Thompson posits that such issues are contested, any testimony regarding the sending or receipt of letters is not the type of testimony that is meant to be barred by Rule 3.7. Further, any testimony offer by Mr. Rubley regarding the nature and amount of attorney's fees that have accumulated as the direct result of Mr. Thompson's filing of frivolous and harmful litigations would fall squarely within the exceptions to Rule 3.7.

14

Pursuant to RPC 1.7 and R.P.C.3.7, Mrs. Haque respectfully requests that this honorable Court enter an order disqualifying Mr. Thompson and Callaghan Thompson & Thompson, PA from representing Skyline Condominium Association and Thompson Realty Company in this matter.

                                           Respectfully submitted,

Dated: April 5, 2017                            /s/ William P. Rubley
                                                  William P. Rubley, Esquire
                                                  Anthony J. Canale, Esquire
                                                  Attorneys for Debtor
                                                  Francis Haque