# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEW JERSEY

SUBRANNI ZAUBER LLC
Willow Ridge Executive Office Park
750 Route 73 South, Suite 307B
Marlton, NJ 08053
(609) 347-7000; Fax: (609) 345-4545
By:    William P. Rubley, Esq.  019192002
         Anthony J. Canale, Esq.  143842015
Attorneys for Plaintiff, Frances Haque

| | |
|---|---|
| In Re:<br><br>FRANCES HAQUE<br><br>Debtor | **Case No.: 13-36691-ABA**<br>**Chapter 7** |
| FRANCES HAQUE<br><br>Plaintiff.<br><br>v.<br><br>SKYLINE CONDOMINIUM ASSOCIATION, THOMPSON REALTY COMPANY; CALLAGHAN THOMPSON & THOMPSON, PA and WILLIAM A THOMPSON, III, ESQUIRE<br><br>Defendant. | **Adversary No.: 17-01117-ABA** |

### REPLY BRIEF IN SUPPORT OF MRS. HAQUE'S MOTION
### TO DISQUALIFY COUNSEL

**I.    FACTS**

Plaintiff, Frances Haque, hereby incorporates the facts of this matter as set forth in her Brief in Support of Plaintiff's Motion to Disqualify Counsel as though the same had been set forth herein at length. Following the filing of the instant motion, Mr. Thompson, on behalf of Skyline Condominium Association ("Skyline") and Thompson Realty Company ("Thompson Realty"),

filled a letter brief in reply to Plaintiff's motion.  Essentially, Mr. Thompson asserts, without any supporting legal citation, that he and his clients had conferred and agreed to waive the present conflicts of interest that give rise to this motion.  The only support for Mr. Thompson's letter is a three (3) paragraph certification from Mr. Dennis Thompson, president of Thompson Realty, which claims that Thompson Realty waives the present conflicts of interest.

## II.     LEGAL ARGUMENT

### a.     Defendants Have Failed to Provide Informed Consent

An analysis of the Rules of Professional Conduct should recognize that a litigant generally has the right to choose its counsel.  In re Congoleum Corp., 426 F.3d 675, 686 (3d Cir. 2005).  "Nevertheless, the obligation to ensure that professional ethics are followed has led courts to rule that counsel has standing to raise and challenge unethical procedures on the part of opposing lawyers."  Id.[1]  This rule of standing allows the profession to self-diagnose potential ethics issues in order to maintain the "stricter, fiduciary standard" imposed on bankruptcy professionals.  Id. at 687 (citing 1 Collier on Bankruptcy (15th ed.) ¶ 8.01[1]).

Rule of Professional Conduct 1.7(b) permits clients to waive certain concurrent conflicts of interest.[2]  The rule states in pertinent part as follows:

> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
> (1) each affected client gives informed consent, confirmed in writing, after full disclosure and consultation, provided, however, that a public entity cannot consent

---

[1] In fact, the standing of an attorney to challenge the ethical legitimacy of his opposing counsel's representation is enshrined in Rule of Professional Conduct 8.3.  RPC 8.3; See, In re Congoleum Corp., 426 F.3d 686; Schiffli Embroidery Workers Pension Fund v. Ryan, Beck & Co., 1994 WL 62124, at *1 (D.N.J. Feb. 23, 1994)("It is enough that the insurers' counsel had the right to raise the issue under the Rules of Professional Conduct and require adjudication by the court. Concluding otherwise would suggest that we do not support the long-standing role of lawyers practicing before federal courts in monitoring and reporting ethical violations.").

[2] For a full briefing on how Mr. Thompson has created a concurrent conflict of interest, Plaintiff respectfully directs this Honorable Court to Section III(b) of the Plaintiff's Memorandum of Law filed concurrently with the original Motion.

to any such representation. When the lawyer represents multiple clients in a single matter, the consultation shall include an explanation of the common representation and the advantages and risks involved;

(2) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(3) the representation is not prohibited by law; and

(4) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal.

RPC 1.7(b). The first requirement of an effective waiver is "informed contest." Id. The Rules of Professional Conduct define "informed consent" as:

denot[ing] the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct.

RPC 1.0(e). New Jersey courts "will not tolerate consents which are less than knowing, intelligent and voluntary." Matter of Dolan, 76 N.J. 1, 13, 384 A.2d 1076, 1082 (1978).[3]

New Jersey and Federal case law has developed guideposts to help attorney's execute waivers that meet the "informed consent" standard. In order to achieve "informed consent" a lawyer must counsel the clients on all of the reasonably anticipated risks of continuing the representation. Boswell v. Price Meese Shulman & D'Arminio, P.C., 2016 WL 4395773, at *10 (N.J. Super. Ct. App. Div. Aug. 18, 2016) (reasoning that "informed consent" could not have been achieved when a lawyer merely told his clients that no conflict existed, that a certain action was necessary, and that the lawyer may need to represent the adverse party in the future). A lawyer's explanation of those risks must include a recitation of the pertinent facts, an "indicat[ion] in specific detail [of] all the areas of potential conflict that foreseeably might arise[,]" and an

---

[3] The Third Circuit acknowledged the applicability of Dolan to matters arising under the current Rules of Professional Conduct, because the language of the operative rules in Dolan was largely retained under the current Rules. See, In re Congoleum Corp., 426 F.3d 675, 686 (3d Cir. 2005).

acknowledgment to the client that the lawyer's representation may have to be terminated in the future. In re Lanza, 65 N.J. 347, 351, 322 A.2d 445, 447 (1974); See also, In re Congoleum Corp., 426 F.3d 691. Finally, to achieve "informed consent," a client must be given a sufficient period of time to contemplate the potential repercussions of waiver. See In re Lanza, 65 N.J. 351, (holding that a waiver for an attorney to represent both parties to a real estate closing was ineffective where the waiver was presented to the clients at the time of closing). In light of these requirements, a consent waiver "can be reviewed by the trial court for fairness, reliability, and compliance with the Rules of Professional Conduct." New Jersey Div. of Child Prot. & Permanency v. G.S., 447 N.J. Super. 539, 577, 149 A.3d 816, 839 (App. Div. 2016).

In a letter brief to this Honorable Court dated April 20, 2017, Mr. Thompson repeats his alarming admission that he, and his firm, have routinely filed actions on behalf of their clients without their clients' knowledge. If true, this presents further ethical issues beyond the "informed consent" arguments raised in the letter brief. In any event, and without delving into the merits of the instant matter, Mr. Thompson has failed to secure "informed consent" waivers from his clients.[4]

---

[4] There is some question as to whether such a concurrent conflict of interest is even waivable by the Defendants. If Skyline, as expected, intends to rely on the "advice of counsel" as a possible defense then it would be in a position of having to lay the blame for its violations of the discharge injunction at the feet of its current counsel. Essentially, at trial Skyline would have to instruct its current counsel, Mr. Thompson, to accuse its prior counsel, also Mr. Thompson, of malpractice. Mr. Thompson's loyalties would be divided between his current clients and himself. Such a defense would also serve as a waiver of the attorney/client privilege; further complicating and already impenetrable spider web of potential violations of the Rules of Professional Conduct. Given the interconnected nature of the different defenses and the question of how those defenses may be impacted by the Rules of Professional Conduct, it is difficult to imagine how any consent can be truly "informed."

      **i.    Mr. Thompson has failed to show Skyline Condominium Association's consent was informed.**

Mr. Thompson has failed to provide any evidence whatsoever from Skyline that Skyline has consented to his representation or that any such consent was informed.

      **ii.    Mr. Thompson has failed to show that Thompson Realty's consent was informed.**

The certification from Thompson Realty does not qualify as a valid waiver under the applicable rules. The certification states in mere conclusory terms that the Thompson Realty was "made aware of a potential conflict with the representation of Thompson Realty Company by [Mr. Thompson] . . . ." The certification, on its face, does not show the level of detail and understanding that is required of a valid waiver. Nevertheless, the certification goes on to say that a written waiver was signed. However, no such waiver has, to our knowledge, been presented to this Court for review. Even more concerning is the date of the certification, April 21, 2017. It is unclear from the certification whether Thompson Realty, through its president, was afforded ample time within which to consider the consequences of waiver. Mr. Thompson's failure to attach the signed waivers leaves this Honorable Court with no way to examine the alleged waivers for "fairness, reliability, and compliance with the Rules of Professional Conduct." Permanency v. G.S., 447 N.J. Super. 577, 149 A.3d 839.

    **b.    Mr. Thompson will be a Necessary Witness in this Matter and his Continued Representation of Skyline and Thompson Realty is Barred by RPC 3.7.**

This matter concerns Mr. Thompson's knowledge, intent, conduct in filing two (2) separate state court actions against the Plaintiff, and to what extent he communicated that information to his clients. Mr. Thompson will be called on to explain his actions and the motivation for his actions. His testimony will be far more involved than simply authenticating documents at trial. In

fact, Mr. Thompson confirms that his testimony is necessary in this matter as neither Skyline nor Thompson Realty

> direct[ed] or control[led] the attorney's actions in filing legal documents. This would include what fees and charges to include or not include in any filing.

See Letter Brief of Mr. Thompson *1. Mr. Thompson is attempting to have his cake and eat it too. On the one hand, his clients' interests are aligned with his as he was solely responsible for the legal filings. While on the other hand, he claims his testimony regarding those same legal filings is not necessary. If neither Skyline nor Thompson Realty can testify about those legal filings, then the only person left who can testify is Mr. Thompson, thus rendering his testimony necessary and his representation of the Defendants barred by RPC 3.7. <u>Ramos v. Cowan Sys., LLC,</u>, 2015 WL 8664279, at *3 (D.N.J. Dec. 11, 2015)( "An attorney is likely to be a necessary witness only where he has crucial information in his possession which may be divulged."(internal citations omitted)).

Mr. Thompson cannot have it both ways. Either his testimony is necessary or his interests are in conflict with the other Defendants. Regardless, his continued representation of Skyline and Thompson Realty is barred by either RPC 1.7 or RPC 3.7.

Respectfully submitted,

Dated: April 26, 2017

/s/ William P. Rubley
William P. Rubley, Esquire
Anthony J. Canale, Esquire
*Attorneys for Debtor*
*Frances Haque*